We're happy to hear from you. Thank you, Judge Wilkinson. May it please the court, this court's decisions in Peterson, Vinson, Middleton, and Hodge address and reject each of the government's substantive arguments about the crime of violence enhancement. We're asking this court to apply those precedents to hold that the offense here is not a crime of violence and we're also asking the court to hold that the district court's alternative sentence is procedurally unreasonable. I would start with the substantive issues and start Judge Niemeyer with your opinion in the Peterson case. So even if we assume from the outset, and I disagree with this and I'll get back to it in a minute, but even if we assume from the outset that the government's right and that Wazin applies in this circumstance and that recklessness is enough under a violent force clause, the decision in Peterson tells us that North Carolina is different. It's an outlier. It uses this culpable negligence standard that almost no one else I know of uses. That standard, as you explained, Judge Niemeyer, in Peterson is, quote, a substantially less serious degree of culpability than recklessness. That's because in North Carolina it turns on thoughtless disregard, whereas recklessness turns on a conscious disregard. And your opinion in that case discussing recklessness has been echoed by the Supreme Court in Wazin. Just like you cited the model penal code for the conscious disregard standard, the Supreme Court in Wazin also cited the model penal code for the conscious disregard standard. So we think that's this clean, clear-cut, easy way to resolve this case. Culpable negligence is less than recklessness. Even if recklessness is enough, this offense doesn't qualify. I would spend a minute, though, on the assumption that I just started with, which is whether Wazin applies in this context. I think this Court's decisions in Middleton and Hodge have resolved that. You have Judge Floyd's thorough two-judge opinion in Middleton explaining why, in his view and now in this Court's view, the context of ACCA and violent force provisions is different from the context of the misdemeanor crime of violence definition. That, I think, is binding on its own as an alternative holding, even if it weren't the Court as the unanimous panel in the Hodge decision adopted that principle of law and applied it in that case. So we think that is binding on that issue as well. The other issue I would address briefly before turning to the alternative sentence question is the divisibility arguments. The government, or excuse me, Vinson is the case that addresses that issue. It says, quote, that North Carolina law permits convictions for all forms of assault in cases where the defendant's conduct does not even rise to the level of recklessness. And it then says, assault is not a divisible offense and the modified categorical approach is inapplicable. That remains a binding precedent of this Court on that point of law. We'd ask the Court to apply it here. I would add that this statute has, or this offense, has none of the hallmarks of divisible offenses. Typically with a divisible offense, we see a statute that's written in the disjunctive that says intentionally, knowingly, or recklessly. We don't have that here. In a lot of other cases, we see differences in the punishment. An intentional assault, for example, is a grade A felony, while a reckless assault is a grade B or grade C, subject to a lesser punishment. We don't have that here either. And the other thing, and this is what Vinson analyzes in reaching its conclusion, is the jury instructions, which this Court has said are the touchstone in the divisibility analysis. Here, as Vinson explains, the jury allows conviction based on culpable negligence and there are no alternative jury instructions that limit you to an actual intent theory. And one other point I would address, the government relies on two North Carolina Court of Appeals cases, Stevens and Hines. Those were briefed before this court in Vinson and rejected. And I think it was in the petition for rehearing where the government specifically cited them. They are off point for a couple of reasons. One is if you look closely at those cases, they have nothing to do with elements or with jury instructions. They are actually cases about due process notice concerns. So Stevens is not especially clear. It just kind of cites Hines. If you go back and look at Hines, it deals with a due process notice situation. The defendant in that case was indicted on one factual theory that in a face-to-face confrontation, the defendant used a handheld object to strike the victim over the head. By the time it went to the jury, they were instructed that the jury could also convict them in an entirely different factual theory that the defendant had, with culpable negligence, driven a car and hit the victim. The problem there wasn't the difference between culpable negligence and intent. The problem there was it's an intent theory. The defendant didn't have notice to defend against it. And so, again, for that reason, we would ask the court to conclude that the offense is not divisible. And that brings us, unless there are questions about that particular issue, to the question of the alternative sentence. Here, this court has a long, long line of precedent saying that for a sentence to be procedurally reasonable, the court must address all of the defendant's non-frivolous mitigating arguments. Here, as we point out in the reply brief, the defendant made a series of mitigating arguments. The district court did not consider them, did not reject them. If the court had considered them, it may well have led the court to impose a lesser sentence. And so, for that reason, we ask the court to hold that this alternative sentence is procedurally unreasonable, remand this so that Judge Conrad can consider those arguments and do a re-sentencing in this case. If there are no questions, I will reserve the rest of my time for questions. We have no questions. May it please the court. I'm going to begin with recklessness and whether or not Voisin changed the landscape, and it did. This court, Voisin makes a clear distinction between volitional and non-volitional conduct. There are four decisions that this court has entered post-Voisin, and I'd like to briefly hit on each one of them. In Burns-Johnson, this court made clear that what Voisin distinguished between was volitional and non-volitional conduct, that laocale was really limited to accidental conduct. In Townsend, this court made clear that Vinson did not, pardon me, in Townsend, right, the court made clear that Vinson is not, doesn't preclude all assaults in North Carolina from qualifying as a crime of violence because that involved an assault with intent to kill, and the court held that it did qualify as a violent felony. In Middleton, which is the case that I think Mr. Carpenter principally relies upon, it was not in the majority opinion. There was a majority opinion. It did not rely on any part on recklessness, and it was a two-judge concurrence. I'm not sure why it was a concurrence, but it was a concurring opinion, and therefore it is not controlling. Is there a distinction between recklessness and culpable negligence? Yes. Well, no. I'm sorry, no. As a practical matter for Adwisi, there is not. I'm Yes, and I would thank you for bringing that up, Your Honor. The language in Jones and in a number of the other cases uses the term culpable negligence, and in Peterson, this court held that that's broader than recklessness, but if this court applies Moncrief versus Holder, where the Supreme Court says there has to be a reasonable probability that it will actually be applied, then there is no case in which it has required less than recklessness, and I'd like to quote Jones of DWI, wasn't it? I'm wondering whether the culpable negligence is different than the negligence that was talked about in Leocal. In other words, that was a Florida statute, and the court noted that if somebody gets behind the risk of DWI and so forth and then causes an accident, he can be guilty of assault causing personal injury, and Jones in North Carolina seems to match that, and it would seem then that we have a problem. Well, the difference is that Jones specifically requires knowledge. It is not just accidental. The court has held in North Carolina, including in Jones, knowledge of not only the risk but the likelihood, and I'm going to quote, ordinary negligence. This is from Stanzel and Mundy, but there are more than six cases that say the same thing, including Jones, and it includes this language. Ordinary negligence is based on the principle that a person should have known of the probable consequences of his act. Culpable negligence rests on the assumption that he knew the probable consequences and was intentionally, recklessly, or wantonly indifferent to the results. That's in Jones too. So Jones uses the language of thoughtless disregard, as do a number of other North Carolina Court of Appeals decisions. And you say that better than Huazin. Absolutely, because it uses the language thoughtless disregard, but it also makes clear that it can't be criminal or culpable negligence if it is simply thoughtless in the sense of I didn't think about it. I do want to note that thoughtless can also mean I thought about it and I didn't care. And if that's what it is, if that's what thoughtless disregard means, then we're there. The difference between Peterson and this case is that in Peterson, there wasn't the, I don't know, I don't recall if there was an argument, but there was at least a possibility. We have no reasonable probability, as the Supreme Court says, there has to be for a defendant to be convicted of assault with a deadly weapon in deflecting serious injury based on accidental conduct. None. There is just no possibility of it. And the defendant hasn't cited one case that says that. Did we reach that in view of the alternative sentence that the district court pretty explicitly laid out? Yes. Look, I think at the end of the day, we went on a harmless error You argue a harmless error and you're brief. We do. I will say, though, on behalf of the United States, no, let me just make it more selfishly. I would love to have an answer to this question and I think we win this question. I think we are right and I would love for this court to actually, on the merits, I would like for this court to look at Middleton and see what Middleton did and did not do. I would like this court to look at Hodge and appreciate what the court did and did not do. And in Hodge, the court did not really consider this issue at all because Maryland didn't contest it. In Middleton, even if this court were to consider that it was controlling, which it's not, but even if it were, Middleton says, we look at each force clause separately. Well, if that's true, what it says about the force clause that it was looking at in Middleton, which was the ACCA force clause, was that ACCA requires intent on the level of a person pulls up a gun, holds it up, and is willing to pull the trigger. If we're going to take Middleton seriously, that every clause is considered differently, then we ought to look at what the sentencing guidelines force clause is and it is not the same as the ACCA force clause. It includes a much broader array of enumerated offenses, some of which do not necessarily require an intent at the same level. So I think that Middleton doesn't take us there. Townsend doesn't take us there. Burns Johnson doesn't and neither does Hodge. So assuming recklessness works, then we look to the question that Judge Niemeyer was asking us about North Carolina. We think there is no reasonable probability, and I think if the court looks at those decisions, it will agree, there's no reasonable probability that a defendant can be convicted of advocacy without knowing the consequences and walking away from them. And those car cases are extraordinarily violent, I might add. Car cases have raised the problem. It is. And Jones addresses it. Right. It's a common occurrence in every state. Somebody gets behind the wheel, is drunk way too much, and ends up killing somebody. Yes, these cases, though, usually... Everybody knows the risk when you get into a car, that you're drunk. And the question is, how is the state prosecuting those things? But these cases actually involve, generally, like there's an officer hanging off the car and the guy's punching him through the window and dragging him around, and it's not just simply somebody had a few drinks and got in the car. Now, turning... On the harmlessness point... Yes. Judge Conrad was pretty emphatic in saying I would impose the same sentence no matter what. And Mr. Carpenter said, well, the sentence, if we disagreed on the merits, the sentence would be a variance, an upward variance. And to impose an upward variant sentence, you need to address the non-frivolous arguments that were raised. Now, what do you say in response to that? Two responses, Your Honor. First of all, that was not raised in Mr. Carpenter's opening brief at all. He didn't challenge the procedural reasonableness of the sentence. So he didn't argue that. Now, he suggests in his reply brief that that's because we didn't argue harmlessness, but if the sentence was procedurally unreasonable, then it was procedurally unreasonable. He didn't make that argument. Second is, I would note that the defendant himself in the district court was arguing in favor of the 70-month sentence that he received. Once the guideline calculation was completed, he actually requested the 70-month sentence. So Judge Conrad did explain the sentence. And the only real argument that he made in mitigation was that his dad, he had a rough childhood because his dad was actually convicted in federal court as well.  And then he specifically talked about criminal history, which was extensive and included a lot of violence, and the nature of the offense, which involved, of course, not only the possession of a stolen firearm, but banging into a police car and trying to evade escape. So Judge Conrad did make an individualized assessment, and he did say that he considered the mitigating argument, which there was one, and the defendant requested a sentence within the guideline range of 70 at the bottom. You said there were four. Yeah. I have a hard time finding exactly how those . . . Either way, the defendant said, first of all, that's not in the opening brief, and that is the defendant was arguing for a 70-month sentence at the time once we talked about the guideline range, once the Judge Conrad made his ruling. When he was arguing for a 70-month sentence at the time, was he arguing that conditionally or in the alternative? Certainly. Yes. Or was he saying, assuming that the guideline range was correctly calculated, then I would argue for a 70-month . . . He did. I mean, he did say he would have argued for a lower sentence if the judge, and I'm not contesting that, absolutely. I'm just simply saying that in terms of evaluating whether or not it's futile to send this back to Judge Conrad, and that is really what animates the decision in Hargrove. Is this an exercise in futility? Judge Conrad made it quite clear that he would have imposed the same sentence, and the defendant's having not contested procedural error in his opening brief has waived that issue. Would they need to contest that in the opening brief before knowing whether the government raises harmlessness? I think so. I do think so, because, I mean, first of all, if the district court didn't adequately explain the mitigating . . . First of all, even if it's a within-guidelines sentence, Mr. Carpenter seems to suggest that because it's within guidelines, there was no reason to make a procedural error argument. But I don't . . . What she's saying is, whether it's a within-guidelines sentence or whether it's a variant or departure sentence, you would need to address the arguments either way. Absolutely. Yes. And if you don't include that in your opening brief, then you haven't included it. You haven't had it. It's been waived. Right. I don't know of any decision in which this court has held that because the defendant received a sentence within the guideline range, there's no duty on behalf of the district court . . . It would. And if it's a procedural error either way, it would be a subject of appeal in the opening brief. Exactly. But the point at the end of the day that you're resting on is that he went over this individual's criminal history, and he went over why he was imposing the sentence he was, and he said, if this is remanded, I'm going to do exactly the same thing. Yeah. He also did say he had considered and listened to all of the arguments, so the defendant's arguments. So it's . . . You really emphasized harmless error, even to the extent that you didn't want the case argued. Well, yeah. You said we don't need to argue it. We just . . . Fair enough. You wanted to go off on a per curiam unpublished opinion. Well, I confess that when I wrote this brief, the harmless error argument was strong enough to me that it didn't merit the argument, but we are here. Well, I know you're here. We need this. No, I'm not suggesting that you don't know, but I am selfishly saying we are here. We have the issue fairly presented. This issue we have, this has come up. I've been arguing this issue either in the district court or this court for a couple of years now, and Voisin has . . . And Mr. Clark has argued it. Absolutely, and in fact, my colleague, Mr. Enright, argued it last term, as did the Eastern District of North Carolina, argued it last term. So this is . . . Or one very similar to Adwisi. It actually wasn't Adwisi, but in the wake of Voisin, I think that one of the things that's important for this court to consider is to consider whether or not recklessness qualifies and to take a look at the post-Voisin decisions that have been entered by this court and think about whether what was decided and what wasn't decided. And join the vast . . . I thought you had an advisory opinion. No, it's not advisory, but it's presented. But also join the vast majority of circuits that have held that Voisin makes a distinction between volitional and non-volitional. And once it does so, that in this context, North Carolina has . . . Voisin didn't actually use the words recklessness, did it? No, I don't . . . Recklessness was qualifying as volitional? Right, yes. So . . . But did Voisin actually say in so many words that recklessness qualifies as volitional conduct? Yes. Yes. And, I mean, it decided that with respect to 921 or the domestic violence events. And I note that this court in Vinson said that that particular provision should be construed consistently with other force clauses.  force clause that was considered in Voisin. So even under Vinson, I think that this court should apply Voisin to the guidelines force clause. And the rest of the arguments with respect to Middleton, I think we need some clarity. This is the opportunity to provide it. It is fairly presented. It is briefed. And at the same time, if this court declines to, please affirm on harmless error because Judge Conrad made it clear that he considered the defendant's arguments and would have imposed the same sentence. Thank you. Thank you very much, Ms. Ray. Mr. Carpenter, let's hear from you in rebuttal. Certainly. So I will start with one sort of very quick clarification and then turn to Judge Wilkinson, one of your primary questions, and then Judge Niemeyer to one of yours. The quick clarification is about whether Voisin mentioned the word recklessness or volitional. And I was curious about this from reading the government's brief. So I went back last night and pulled up that opinion and did a little word search. The word reckless in some form appears 34 times in the Voisin decision. The word volitional appears twice. Voisin is a case about recklessness. There's one mention in one paragraph. How does that help you? Well, first, it helps me. And the government's making this idea that we look at volitional, we don't look at recklessness. First of all, I think this court's rejected recklessness. But if you want to apply Voisin in this context, recklessness is the standard. And for the reasons that Judge Niemeyer pointed out in Peterson, culpable negligence is a lesser standard than that. All right. So you're saying, I mean, your argument is not that Voisin disqualified in some way recklessness as accounting as a qualifying mental state. Your argument was that culpable negligence and recklessness are different things? Absolutely. That's our primary argument. Recklessness and negligence are different things. But what about culpable negligence? I mean, doesn't culpable negligence suggest that the individual, I mean, almost was willfully blind to the fact that force was going to be applied? So culpable negligence is certainly a middle ground between ordinary negligence and recklessness. And I would explain it the way that Judge Niemeyer explained it in Peterson. Again, he highlighted one of these things, culpable negligence involves thoughtless disregard, the other conscious disregard. And he said, and it's a pretty simple concept, thoughtless disregard, however, is less than conscious disregard. And that's not a hard concept to understand. Doing something consciously, knowing there's a risk, and doing something thoughtlessly without thinking about it. And that's why all of these car cases come in, and that's why they are a problem. I'm not aware of any circuit that has extended Voisin to cover this driving scenario. And I point the court, as I did in the reply brief, to the Eighth Circuit, which in the Fogg case says, we're going to apply Voisin in these violent force cases. Judge Floyd, in his plurality opinion in Middleton, thoroughly rejects that and criticizes Fogg as being wrongly decided. Even setting that aside, the Eighth Circuit subsequently said in the Fields case, even applying Voisin, we are excluding any assault provision that is interpreted and applied so broadly that it covers a reckless driving with injury case. And the reason that makes sense is that the point of these violent force clauses, which is something the Supreme Court recognized going back to Begay, is to identify the kind of person who's so dangerous that they may pull the trigger. I'm wondering if, Bill, we are sort of looking at the men's ray here as a global thing, and whether recklessness is always sufficient to qualify, whether culpable negligence is always sufficient to qualify. But don't the car cases differ substantially from what we have here? I mean, reckless driving is one thing. But here we're talking about assault with a deadly weapon inflicting serious injury. I mean— Don't be deceived. No, no, no. But isn't that a world away from a reckless driving conviction? No, it's not. It's easy to be deceived, I think, by the very nasty label on this offense, assault with a deadly weapon inflicting serious injury. But as it's prosecuted in North Carolina, it's an exceedingly broad offense. It covers at the extreme end exactly what you would think by that nasty title, you know, assault with a weapon or whatnot. But on the other end, the things that are frequently prosecuted under this exact offense in state court in North Carolina are these reckless driving cases or culpable negligence driving cases. And that's what you see in Jones. The seminal decision on the culpable negligence standard as applied to this advocacy offense is State v. Jones. It's a driving case. It's not—we're not talking about any realistic theoretical possibilities. We're talking about this is how this is prosecuted. And the same thing we cited in the briefs, INRI HML, in the reply brief. That's a case where, again, the culpable negligence standard is used, not in the car context, but in the context of an— What about the center of gravity of North Carolina cases, though? I mean, you can always point to an outlier thing. And Duane Alvarez says, well, you shouldn't just point to a single outlier. You point to one car case. But, I mean, let's talk about how the run-of-the-mill cases are applied. Well, I think, actually, if you looked at the run-of-the-mill, there are many, many published cases on the car cases in North Carolina. But I would point out the most important thing is that's not the analysis this court does. You have to do the elements until the sentencing commission tells you otherwise. The court, you know, in the Aparicio-Soraya in-bank panel, I said that in a very clear opinion, that we don't do this analysis of what happens in most of the cases. We look at the elements. And here it's very clear, stated repeatedly— I mean, we've got a Supreme Court case out there that we do look to the ordinary case and we don't look to an imagined— No, we—the ordinary case approach has been struck down as unconstitutionally vague by Johnson. And so that we don't do. We do elements. Well, maybe so, maybe not. Well, certainly under the Armed Career Act— You're going to get a lot of answers from the great court. Yes, for sure. But that's in an entirely different context, an entirely different statute. And I will acknowledge that we will see what happens there. But I do—I know I'm going to go a little bit over time, but I would appreciate an opportunity to respond to the suggestion that I have somehow waived this procedural reasonableness argument because that's, I think, very incorrect under this court's law. And so I would like the opportunity to explain why. There are two reasons. The first is, as you pointed out, Judge Wilkinson, this comes into play only if we are right on the guidelines and if the judge is imposing an upward variance. Because, as judges, you have to do a lot more. As I understand, Carter, even if it's within a— if it's a within-guidelines sentence or even if it's a downward variance or a departure, you still, no matter what the sentence is, you still have to give reasons when a serious argument is put forward. And, you know, by not—if you didn't include this, didn't even include it in your opening brief, that deprives another party of an opportunity to respond. Well, they had their opportunity to respond, both in the brief where they laid it out and here. But the thing I want to point to is not Carter but Lynn. This court in Lynn says that if the court gives you the sentence you ask for, you do not have the chance to argue. You have not preserved an argument for procedural error. That's what happened here. Once we lost the guidelines issue, we, you know, conditionally asked for the low end. The court gave us that. Is it enough if the court says, I've considered the arguments of the attorneys? No, it's not. And this is a long, long line of cases, including the Ross case, Judge Niemeyer, that you were on the panel just a couple of weeks ago, blew before that, slappy. Lots of other decisions repeatedly have said— There's a recent Supreme Court case that undermines all this. The court says all you have to do is indicate, or the record has to show that the judge considered it. Well, but that's on the first prong, and we are not contesting the first prong of Seve Amatute. It's a two-step. Did the judge say— I'm talking about now this general notion for explaining sentences. And they—slappy used the word you had to address each— used the word address each non-frivolous case. But since slappy, the Supreme Court came out and basically said you don't have to address each. The record has to show that it was considered. So I'm not familiar with that case, and I'm not quite sure it says exactly that. It came out— Which case? Do you know the name of it? Which case is that? While she's looking for that, I'll add one other point that I don't want to forget as to why this procedural error argument wasn't in the opening brief. We had a plea agreement in this case that barred us from raising anything except for this crime of violence issue. Had we included procedural error separately in our opening brief, we could have been—it could be argued that we were in breach of the plea agreement. The government could have moved to dismiss. It's a very important point that I don't want the court to lose. The other point I don't want the court to lose, this is, under this court's case law, an affirmative defense. If the government doesn't raise harmlessness, it weighs it. And that's something that the court reiterates repeatedly. But what you're suggesting is that you can always lie in the weeds on this question of procedural reasonableness. And by doing so, you can deny the government any kind of right. There's a whole briefing schedule with an opening brief and a responsive brief and a reply brief. The whole supposition of that is that each side gets one chance to reply. And by doing this, you deny a basic right of appellate procedure which is that you get one fair shot at reply. So a couple of points. One is if you look at United States v. Hall, 858 F. 3rd 254 at footnote 8, it says the government waived a harmlessness argument by failing to raise it in its brief. The government has the opportunity to raise harmlessness in its brief, and we can respond. And if by chance the court thinks that supplemental briefing would help on this, I have absolutely no objection. I certainly didn't mean to do anything untoward. What I didn't want to do was violate the plea agreement. The case I'm referring to is Chavez Meza. Okay. United States Supreme Court, 2018. Okay. And in that case, the court said, in some cases it may be sufficient for purposes of appellate review that the judge simply relied upon the record while making clear that he or she has considered the party's arguments and taken into account the 3553A factors. So I'll certainly take a look at that. My recollection is. But in this case, the district judge not only said that, but he then went through all the positive factors that were motivating him to impose the sentence, and he went on for a couple of pages. And that's before he gets to the notion that he's going to impose a sentence notwithstanding. So a couple things I would point out there. One, Chavez Meza, if I'm remembering it correctly, is a post-conviction like 3582C2 case as opposed to like a direct sentencing, I think. Yeah, but they also said we're applying the same standards you apply during sentencing. There was an argument made there's a different standard. Well, I'll certainly go back and look at that. The other thing is that the sentence explanation here is very short. It's at Joint Appendix 56 to 57, and it's essentially the last carryover paragraph at the page, and it covers two paragraphs, about three sentences, where the court says a very pro forma, I've considered all of the arguments, I've considered his criminal history, and this is the sentence I would impose. Well, it's two full pages. No, the actual person-specific explanation starts at about the third paragraph down on 56. Thank you. I always appreciate the passion you bring to your cases, and the same goes with respect to Ms. Ray. You've treated this court over the years to some very fine argument, and we appreciate it. Thank you, Judge. I appreciate that. We'll adjourn court and come down and brief counsel. This honorable court stands adjourned, sign of the diag. Godspeed to the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King